UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENDA J. NISSEN, and THOMAS NISSEN, | ) ) ) | CIV. 09-4166-KES |
| Plaintiffs, | ) ) | ORDER DENYING PLAINTIFFS' |
| | ) | MOTION TO STRIKE DEFENDANT'S |
| vs. | ) | SUPPLEMENTAL AND SECOND |
| | ) | SUPPLEMENTAL DISCLOSURE OF |
| MATTHEW R. JOHNSON, M.D., M.P.H., | ) | EXPERT WITNESSES |
| | ) | |
| Defendant. | ) | |

Plaintiffs, Brenda J. Nissen and Thomas Nissen, move to strike defendant's, Dr. Matthew R. Johnson, M.D., M.P.H., supplemental and second supplemental disclosures of his expert witnesses' reports. Docket 52. Pursuant to Nissens' request, the court ordered expedited briefing on the motion. Docket 53.

**BACKGROUND**

The pertinent facts to this order are as follows: Nissens brought a medical malpractice suit against Dr. Johnson after Brenda developed severe pain and numbness in her right arm after Dr. Johnson performed surgery on Brenda on February 7, 2008. The parties and their experts dispute what caused Brenda's injury.

The court's scheduling order provided that expert reports were due by December 13, 2010, all discovery, including expert discovery, would be complete by May 16, 2011, and that any supplementations to expert reports "under Rule 26(e) shall be due twenty days prior to trial." Docket 15.

Nissens admit that Dr. Johnson timely provided them with copies of his initial expert reports. Docket 52. On September 23, 2011, Nissens received Dr. Johnson's supplemental and second supplemental disclosures of expert witnesses.

### DISCUSSION

Dr. Johnson argues that the court should strike Nissens' motion because they failed to provide a brief in support as required by the local rules. Nissens filed a brief in response to Dr. Johnson's opposition. Docket 60-1. The local rules require parties to attach a written brief with every motion. D.S.D. Civ. LR 7.1(B). While parties should timely comply with the local rules without prompting, striking a motion on a technicality this close to trial would work an injustice.

Dr. Johnson also argues that it is unclear what testimony or reports Nissens want to strike. Nissens attached to their motion to strike Dr. Johnson's "Supplemental Disclosures of Expert Witnesses Pursuant to F.R.C.P. 26(a)(2)(B)" and "Defendant's Second Supplemental Disclosures of Expert Witnesses Pursuant to F.R.C.P. 26(a)(2)(B)." Dockets 52-5, 52-6. These reports will hereinafter be referred to collectively as the September reports. Nissens move to strike these September reports, which impliedly means that they request that the experts be precluded from testifying regarding the matters newly disclosed in the September reports. It is sufficiently clear that Nissens are requesting that the court strike Dr. Richard Fessler's, Dr. Daniel Riew's,

Dr. David Kispert's, and Dr. Matthew Howard's September reports and their opinions that had not previously been disclosed.

Dr. Johnson contends that because he has not violated the court's scheduling order, the motion to strike should be denied. In conducting discovery, parties are required to comply with the court's scheduling order. Fed. R. Civ. P. 26(a)(2)(D). A district court " 'may exclude from evidence at trial any matter which was not properly disclosed in compliance with the Court's pretrial order.' " *Life Plus Int'l v. Brown*, 317 F.3d 799, 803 (8th Cir. 2003) (quoting *Dabney v. Montgomery Ward & Co.*, 692 F.2d 49, 51 (8th Cir. 1982)).

The scheduling order states that, pursuant to Rule 26(e), supplemental expert disclosures must be made 20 days prior to trial. Trial is currently scheduled for November 14, 2011, and Nissens received Dr. Johnson's September reports on September 23, 2011. While Dr. Johnson's September reports were disclosed within the scheduling order's time frame for supplemental reports, that does not automatically mean that the reports are in fact supplemental reports under Rule 26(e).

Rule 26(e) requires a party to supplement an expert report to include information later acquired if the initial disclosure is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A); *see also Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) ("Rule 26(e) only permits supplemental reports for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report."). The purpose of a supplemental report is to "inform the

3

opposing party of any changes or alterations," *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999), not "to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). If a report "does not correct inaccuracies or add information that was unavailable to [the expert] at the time of the initial report," then the report is "more like a rebuttal report offered solely to contradict or rebut expert testimony offered by" the other party. *Sancom, Inc. v. Qwest Commc'ns Corp.*, 683 F. Supp. 2d 1043, 1063 (D.S.D. 2010) (discussing Fed. R. Civ. P. 26(a)(2)(C)(ii)).[1]

Nissens submitted a supplemental brief in response to Dr. Johnson's resistance to their motion to strike detailing the differences between Dr. Johnson's experts' initial and September reports. Docket 61. The court has reviewed the brief's comparisons between the initial and September reports and independently reviewed Dr. Johnson's September reports for Dr. Fessler, Dr. Riew, Dr. Kispert, and Dr. Howard and compared them to these experts' initial reports.

Dr. Johnson's September reports contain numerous new opinions. For example, the initial reports conclude that Brenda's injury was caused by a

---

[1] Pursuant to Rule 26(a)(2)(D)(ii), defendant's rebuttal reports were due 30 days after the disclosure of plaintiffs' expert witness disclosures. According to the scheduling order, this would have been by November 12, 2010. Docket 15.

vascular event.[2] The September reports contain new opinions on what caused

the vascular injury leading to Brenda's permanent right arm injury.[3] The

September reports also discuss other issues that were not contained in the

initial reports, including the efficacy of the procedure that Dr. Johnson used on

Brenda, the METRx tubular retractor system, and opinions concerning whether

Dr. Johnson's tools could have penetrated Brenda's spinal cord. *See* Docket 61.

While the experts' initial disclosures contained an outline of the experts'

opinions, the lion's share of their opinions, which are new opinions, are

contained in the September reports.

Dr. Johnson does not argue that any of the September reports correct

inaccuracies contained in the initial reports. He also does not contend that the

---

[2] Docket 52-2 at 2 ("In Dr. Riew's opinion, the signal change on the right side of the spinal cord was more likely than not caused by a vascular event and less likely caused from surgical trauma."); Docket 52-3 at 1 ("In Dr. Kispert's opinion, it is more probable than not that the signal change . . . was caused by a spinal cord infarct."); Docket 52-4 at 2-3 ("In Dr. Howard's opinion, the cause of this spinal cord signal change is unknown, but possible etiologies would include a vascular event, inflammatory response of the patient, or some type of demyelinating processes."); Docket 52-1 at 3 ("In Dr. Fessler's opinion, the signal change on the right side of the spinal cord was more likely than not caused by a vascular event.").

[3] Docket 52-5 at 2 ("In Dr. Fessler's opinion, Mrs. Nissen experienced an interruption in the blood supply to an area of her spinal cord at or about the time of the surgical procedure . . . contributing factors include: fluctuations in Mrs. Nissen's blood pressure during the surgery; movement or occlusion of her right posterior spinal artery . . . ; the development of a blood clot; . . . or the inflammation, bleeding, and/or swelling that is an unavoidable component of undergoing surgery."); Docket 52-6 at 8-9 (containing a similar explanation by Dr. Howard); Docket 52-6 at 3 (containing a similar explanation by Dr. Riew); Docket 52-5 at 7-8 (containing a similar, but less extensive, explanation by Dr. Kispert).

September reports are offered for the purpose of adding new information that was not available at the time of the initial reports. All four experts reviewed Brenda's medical files before they authored their initial reports. *See* Dockets 52-1 at 3-4 (stating that Dr. Fessler reviewed Brenda's medical records); 52-2 at 3 (stating that Dr. Riew reviewed Brenda's medical records); 52-3 at 1 (stating that Dr. Kispert reviewed Brenda's MRI scans); 52-4 at 3 (stating that Dr. Howard reviewed Brenda's medical records). The record reflects that Dr. Johnson deposed all of Nissens' experts prior to the deadline imposed by the court on Dr. Johnson for disclosure of his expert reports. Because Dr. Johnson has not shown that the September reports correct inaccuracies or add information that was not available at the time of the experts' initial reports, the reports are not supplemental reports under Rule 26(e).

Dr. Johnson, citing *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201 (6th Cir. 2006), contends that his experts' opinions are not new opinions because the "experts merely expounded on the opinions that they had previously disclosed, which is not prohibited under Rule 26." Docket 55 at 3. In *Thompson,* the Sixth Circuit reasoned that Rule 26(a)(2)(B) "does not limit an expert's ***testimony*** simply to reading his report . . . . The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." 470 F.3d at 1203 (emphasis added). *Thompson* is not persuasive because it addresses an expert's testimony, not an expert's supplemental report.

The expert reports are not supplemental reports under Rule 26(e), and therefore, they are untimely because they were disclosed ten months after the deadline for disclosure of expert reports. *Id.* "Untimely disclosure of an expert opinion triggers Rule 37(c)(1) sanctions, including the exclusion at trial of testimony on undisclosed opinions, unless 'the failure was substantially justified or is harmless.' " *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).

The court considers four factors in determining whether exclusion is a proper sanction for an untimely expert report: (1) the excluded material's importance; (2) the party's explanation for failing to comply with the discovery rules; (3) potential prejudice if the evidence were to be used at trial; and (4) the availability of a continuance to cure any prejudice. *Citizens Bank of Batesville, Ark. v. Ford Motor Co.*, 16 F.3d 965, 967 (8th Cir. 1994) (applying the test to excluding witnesses at trial); *see also Sancom*, 683 F. Supp. 2d at 1063 (applying this test to exclude an expert's supplemental report). The district court has great discretion to strike expert testimony that is disclosed in contravention of the court's scheduling order. *See Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003) (" 'Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of that discretion.' " (quoting *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 296 (8th Cir. 1996))).

Under the first factor, the material's importance, Dr. Johnson does not argue that the untimely reports are material for him to adequately defend his case. While all of the September reports provide expanded explanations for

7

Brenda's injury, they do not change Dr. Johnson's basic theory for Brenda's injury, namely that a vascular event caused her injury. Regarding the second factor, Dr. Johnson offers no explanation for failing to comply with the discovery rules. The untimely reports are not based on any new information except for Brenda's updated medical records from her physician who treats her pain symptoms. The first and second factors weigh in favor of finding that the untimely reports are not substantially justified.

Under the third factor, the court evaluates what prejudice Nissens will experience if the untimely reports are admitted. Nissens argue that "[t]hese new supplemental opinions were foreseeable and should have been disclosed. Plaintiffs' experts do not have sufficient amount of time prior to the start of the trial to review Defendant's supplemental opinions and to respond and to prepare their own supplemental opinion reports." Docket 52 at 2. As an example of prejudice, Nissens state that they "are going to have to refocus their case, devise new exhibits and prepare for the defense experts cross examinations in a totally different manner . . . ." Docket 60-1 at 2. Nissens' experts will also have to explain their lack of response to the supplemental reports: "Plaintiffs' experts will have to defend against the charge that they did not have written reports responding to the defense supplements and the defense will have the advantage to put their expert reports into evidence and the Plaintiffs won't have a written exhibit in response." Docket 60-1 at 2.

The prejudice articulated by Nissens is minimal. They have scheduled the depositions of their experts for use at trial on October 24, 2011, October 25, 2011, and November 2, 2011. Because these depositions were not scheduled to commence until four weeks after Nissens received the September reports, Nissens have had adequate time to provide the reports to their experts and have them address any new expert opinions in their deposition testimony. Under the circumstances of this late disclosure, the court will waive the requirement for rebuttal reports under Rule 26(a)(2)(D)(ii) and allow Nissens' experts to testify, without preparing a report in advance, in rebuttal to the new opinions set forth in the September reports. Furthermore, Nissens will not be prejudiced because of their failure to have a written rebuttal report to respond to the September reports because neither side's reports will be admitted into evidence. Such reports are cumulative and not admissible. Thus, factor three weighs in favor of denying the motion to strike.

The fourth factor examines whether the prejudice can be cured with a continuance. This case has been pending since November 16, 2009, and trial is scheduled for November 14, 2011. Neither party has asked for a continuance, but a continuance is available if requested. Factor four weighs in favor of denying the motion to strike.

After weighing all of the factors, the court finds that Nissens have not shown prejudice. Thus, Nissens' motion to strike is denied.

## CONCLUSION

Nissens move to strike Dr. Johnson's supplemental and second supplemental disclosure of expert witnesses. Because the supplemental expert reports did not correct an inaccuracy in the initial reports and were not based on information that was unavailable to the experts when they wrote their initial reports, the disclosures are not supplemental reports under Rule 26(e). Because Nissens have not shown prejudice, however, the court will not impose sanctions. Accordingly, it is

ORDERED that plaintiffs' motion to strike defendant's supplemental and second supplemental expert disclosures (Docket 52) is denied.

Dated October 20, 2011.

BY THE COURT:


/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE